**In the Matter of a Grand Jury Subpoena Served upon David DOE.**

**Nos. 975, 976, Dockets 77–1047, 77–1059.**

United States Court of Appeals, Second Circuit.

Argued March 2, 1977.

Decided March 17, 1977.

John P. Flannery, II, Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y. and Frederick T. Davis, Asst. U. S. Atty., New York City, on the brief), for appellee United States of America.

Paul B. Bergman, New York City (Ford Marrin Esposito Witmeyer & Bergman, and Thomas R. Esposito, New York City, on the brief), for appellant Sebastian Intersimone.

Thomas Fitzpatrick, New York City, and David Doe, for appellant David Doe.

Before LUMBARD and OAKES, Circuit Judges, and BONSAL, District Judge.[*]

LUMBARD, Circuit Judge:

"David Doe"[1] appeals from an order of Judge Pierce, entered on February 1, 1977, holding him in contempt for refusal to testify before a Southern District grand jury inquiring into the attempted bribery of a petit juror, William T. Keno; the offense is believed to have taken place during the trial of Doe's client, Sebastian Intersimone, before Judge Owen for violation of the narcotics laws. Intersimone has also filed a notice of appeal from the district court's order. We affirm the order and direct our mandate to issue forthwith.

The trial of Intersimone and twenty-one co-defendants, *United States v. Alvarez,* 76 Cr. 324, commenced before Judge Owen and a jury on August 10, 1976. The defendants were charged with conspiracy to violate the narcotics laws by importing and distributing large amounts of heroin and cocaine over a period of years prior to their indictment.

Judge Owen was first alerted to the possibility that a juror might have had questionable contacts with the defense on September 20. This occurred when Intersimone's trial attorney, Doe, brought the matter to the attention of Assistant United States Attorney Beller, and then spoke to Judge Owen *in camera* with Mr. Beller.

We first summarize what the record shows took place before Judge Owen on September 20. At the *in camera* consultation Doe informed Judge Owen that some time after trial had begun, Intersimone advised him that Bernard Brightman, a co-defendant on trial, had told Intersimone that there was a possibility of reaching one of the jurors. Doe stated that he believed Intersimone's response to Brightman's approach was "inappropriate." According to Doe, after Intersimone had related these events to him, he told Intersimone in no uncertain terms to tell Brightman that he wanted no part of this. Doe thought no more of this incident until Friday, September 17. During the lunch recess on that day Intersimone's sister, Yolanda Intersimone, was approached by William Keno, juror No. 10, as she was leaving a drug store at 299 Broadway. When Keno asked her if she was Mr. B's wife ("Mr. B." being a name by which Intersimone had been referred to at trial) she replied that she was his sister. Keno then asked her to tell her brother that he had a message for him. After Yolanda allegedly remonstrated with Keno for talking to her, he asked her to tell her brother to meet him Monday during the lunch recess.[2]

█ When Yolanda Intersimone's contact with Keno was reported to Doe it was determined that the court should be advised. Doe in his brief to the court, and by affidavit, asserts that it was his belief that Intersimone agreed that Judge Owen should be advised of Intersimone's earlier revelation of the conversation with Brightman. Intersimone's position is that he never consented to the disclosure of this talk with Doe and the consequent waiver of his attorney-client privilege. In our view of the case, any misunderstanding between Doe and Intersimone is wholly immaterial. The conversation that was revealed to Doe related to a plan to bribe a juror; bribery of a petit juror during a federal trial is, of course, a federal offense, see 18 U.S.C. § 1503, which strikes at the very heart of the true administration of justice. We find

---

[*] Sitting by designation.

1. At the request of the attorney we use this pseudonym, although of necessity his true name must appear in any formal orders. We have no reason to believe that he acted otherwise than in good faith.

2. This occurrence was related to Doe on Friday September 17. Doe advised the court on September 20, the following Monday. Yolanda was called in and examined by the court *in camera,* in the presence of Beller and Doe. Her rendition of her conversation with Keno was substantially the same as that described to the court by Doe.

that the government has made the requisite prima facie showing that the conversation alleged to be privileged related to an intended or ongoing illegality. See *United States v. Friedman,* 445 F.2d 1076, 1086 (9th Cir.), cert. denied, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971); *United States v. Bob,* 106 F.2d 37, 40 (2d Cir.), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939). This conclusion is apparent from the substance of the communication itself and becomes even clearer in light of Keno's conversation with Yolanda Intersimone on September 17th. Accordingly, as found by the district court, the communication was not protected by the attorney-client privilege. See *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1932); *United States v. Friedman,* supra, 445 F.2d at 1086; *United States v. Hoffa,* 349 F.2d 20, 37 (6th Cir. 1965); *United States v. Bob,* supra, 106 F.2d at 40. It is enough to defeat the claim of privilege that the contemplated crime would or might inure to the client's benefit and that he might be a participant. See, e. g., *United States v. Friedman,* supra, 445 F.2d at 1086.

Doe's report to the government and to the court on Monday September 20, the next trial day after Keno's conversation with Yolanda Intersimone, was entirely proper; indeed, it was the only course of action left open to David Doe as a member of the bar and an officer of the district court. Thus, the A.B.A.'s Standards Relating to the Administration of Criminal Justice (1974) provides in § 3.7 of its standards relating to the defense function that "a lawyer may reveal the expressed intention of his client to commit a crime and the information necessary to prevent the crime; and he must do so if the contemplated crime is one which . . . would corrupt the processes of the courts and the lawyer believes such action is necessary on his part to prevent it."[3]

Judge Owen immediately examined the juror Keno *in camera.* Suffice it to say that Keno's responses fully justified the trial judge's discharge of Keno from the jury and the designation of an alternate to take his place. By the same token, the government was required to make further inquiry and to question all those with any knowledge of attempts by any of the defendants to contact Keno. The resulting investigation was pursued by the grand jury immediately following the conviction of Intersimone and sixteen other co-defendants in November 1976.[4]

Doe was subpoenaed to appear before the grand jury on January 19, 1977, and refused to relate his conversation with Intersimone regarding Brightman. According to the government, eight days earlier on January 11, 1977, Doe had given the government a detailed statement of his conversation with Intersimone concerning the plan to bribe a juror.[5]

David Doe's refusal to testify was referred to Judge Pierce, sitting in Part I, and after argument and briefing, which included affidavits from the government

---

3. See Approved Draft 1971, The Prosecution and the Defense Function at 221–22. Similarly, DR 4–101(c)(3), 29 McKinney's Judiciary Law Appendix at 433, provides that a lawyer may reveal "[t]he intention of his client to commit a crime and the information necessary to prevent the crime." ABA Opinion 314 (1965) indicates that a lawyer must disclose the confidences of his client if "the facts in the attorney's possession indicate beyond a reasonable doubt that a crime will be committed."

4. Intersimone was sentenced to 15 years imprisonment together with a $25,000 fine. The jury was unable to reach a verdict as to Brightman and, thus, a mistrial was declared; he was acquitted in a retrial.

5. This statement was made to Assistant United States Attorney John P. Flannery, II. Flannery refers to his January 11 conversation with Doe in his affidavit of January 25, 1977, submitted to the district court in opposition to Doe's motion to quash the grand jury subpoena. Reference to Doe's January 11 statement is also made in the government's briefs. Both the briefs and Flannery's affidavit have been sealed and have not been made available to Intersimone as they contain material concerning the grand jury investigation, see discussion, infra. Although Doe disputes the details of the government's assertions regarding his January 11 conversation, he does not dispute that he made a statement concerning Intersimone's conversation with Brightman.

and Doe, he held that the conversation was not privileged "since the statements dealt with a future intended illegality." Upon David Doe's further refusal to testify, the court held him in contempt and his appeal from that order was expedited and heard by us on March 2.

Meanwhile, Intersimone has been represented by other counsel who claims that Intersimone has the right to appeal the district court's order compelling his former counsel to disclose the conversations they had relating to the bribing of a juror. The government has moved to dismiss Intersimone's appeal on the ground that he has no standing, and consequently it has not served on Intersimone's present counsel any brief that recites facts relating to certain matters presently before the grand jury and to certain papers ordered sealed by the district court.

As a recital of the facts makes abundantly clear, the conversations in question between David Doe and Intersimone related to the bribery of a juror and, as indicated above, such conversations may not be withheld from the grand jury. The proper administration of justice would be impossible if it could be asserted, or even seriously argued, that such a conversation between attorney and client must be shrouded in silence and darkness. The attorney-client privilege has no relation to the disclosure of on-going criminal activity or information relating to it, such as is exemplified by Intersimone's communications to his lawyer regarding bribery possibilities. We are not presented with a case in which a client has gone to his attorney in good faith, seeking an opinion as to the legality of certain conduct in an area where legal boundaries may be difficult for the layman to discern; such a case would present entirely different issues than are present here. There can be no doubt that anyone on trial before a jury would know of the impropriety and illegality of attempts by the defense to bribe a juror. Accordingly, we affirm the district court's order adjudging David Doe in contempt. We direct that our mandate issue forthwith.

■ We dismiss Intersimone's appeal. It is enough to say that the matters disclosed to Judge Owen on September 20, 1976, made it clear that any disclosure that Doe made or could make regarding his client's statements concerning the bribery of a juror was imperative. Intersimone's claims are without merit in the light of all that was known to the district court and his arguments here do not require further comment. This we conceive as a clear case of an attorney's duty to disclose. This is not to say that there will never be a case in which the client will have a basis to assert that his attorney's assertion of the privilege is not sufficient. Cf. *Perlman v. United States,* 247 U.S. 7 (1918). However, where the privilege has been staunchly asserted and defended by the attorney and is nonetheless inapplicable, it would violate good sense and the secrecy necessary to grand jury proceedings to allow the client, a potential target of the grand jury proceedings, to obtain documents and information regarding testimony before the grand jury on the theory that he was attempting to protect his attorney-client privilege. Cf. *In re September 1975 Grand Jury Term,* 532 F.2d 734, 737 (10th Cir. 1976).