**Emily C. MARTIN, et al., Appellants,**

v.

**Charles A. LAUER, et al.**

**No. 82–1322.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 3, 1982.
Decided Aug. 17, 1982.

John W. Karr, with whom Mona Lyons, Washington, D. C., was on the brief, for appellants.

Bobby R. Burchfield, with whom Charles Lister and Arthur Spitzer, Washington, D. C., were on the brief for amicus curiae American Civil Liberties Union.

Douglas Letter, Atty., Dept. of Justice, with whom Stanley S. Harris, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Robert M. Tobias, John F. Bufe and William F. White, Washington, D. C., entered appearances for amicus curiae Nat. Treasury Employees Union.

Before ROBINSON, Chief Judge, WALD, Circuit Judge, and SWYGERT,* Senior Circuit Judge for the Seventh Circuit.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This is an expedited appeal brought by two senior level employees of the Office of Juvenile Justice and Delinquency Protection ("OJJDP" or "agency"). Appellants seek reversal of a district court order and opinion upholding agency restrictions on their ability to communicate with their counsel in another suit challenging an agency reduction in force ("RIF").[1] The district court ruled that OJJDP could bar appellants from disclosing to their counsel any agency documents or information gathered therein that "could be subject to the Privacy Act."[2] It further ruled that appellants may be required to inform the agency of what information or documents have already been revealed to their counsel which

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. That action has now been dismissed by the district court. *Andrade v. Lauer*, Civ. Action

No. 82–848 (D.D.C. June 30, 1982). A notice of appeal was filed on July 27, 1982.

2. 5 U.S.C. § 552a.

"could be subject to the Privacy Act, or exempt from disclosure under the Freedom of Information Act" ("FOIA").[3]

 Appellants contend that the restrictions are unconstitutionally and statutorily vague, are contrary to the whistle-blower provisions of the Civil Service Reform Act ("CSRA"),[4] violate their first amendment rights, and interfere with their access to the courts. We conclude that the restrictions are invalid insofar as they *broadly* require appellants to disclose communications with counsel regarding *any* FOIA-exempt information. We do not express an opinion, however, on the legitimacy of the Privacy Act restrictions. Although appellants argue on appeal that the Privacy Act restrictions are invalid, it appears that they may only be contesting this aspect of the agency's directive because they believe they are under court order to comply with it. Since the restrictions pertaining to the Privacy Act raise especially difficult questions that would benefit from full consideration by the district court, we remand for further proceedings.[5]

## I. BACKGROUND

Appellants Emily D. Martin and David D. West are employees of the OJJDP, holding GS–15 Senior Level Manager positions.[6] On December 3, 1981, they, along with all other OJJDP employees, received a "Notification of Reduction in Force" from Robert F. Diegelman, Acting Director of the Office of Justice Assistance, Research and Statistics ("OJARS"), informing them that

"[b]ecause of severe budget limitations and the resulting need for a major restructuring of the JSIA [Justice Systems Improvement Act of 1979, P.L. 96–157, 93 Stat. 1167] Agencies, it will be necessary to conduct a reduction in force between January and March 1982."[7]

Convinced that the proposed RIF would be illegal, a majority of OJJDP employees, including appellants, retained counsel to contest any such personnel action.[8] Appellants then notified Charles A. Lauer, Acting Administrator of the OJJDP, of their decision to participate in an anticipated lawsuit attacking the legality of the RIF.[9] On the following day, February 24, 1982, Lauer responded to appellants with a memorandum entitled "Lawsuit to be Filed Against Agency," which "inform[ed them] of the legal restrictions on such activities . . ."[10] The restrictions stated in relevant part:

3. You may not provide information or documents to the attorney representing these employees or to any other person assisting the employees or that attorney. In addition, there is a Department of Justice regulatory procedure governing the release of information involving litigation (See 28 C.F.R. § 16.21 *et seq.*). Employees are prohibited from releasing any information, producing any materials or disclosing any information in those materials except with the approval of the appropriate Department official which in this matter would be the Assistant Attorney-General of the Civil Division.

---

3. 5 U.S.C. § 552.

4. 5 U.S.C. § 2301(b)(8), (9).

5. In reaching this conclusion we rely on several specific features of the case before us. First, this case in its present posture only concerns oral communications with counsel, and not any transmittal of government documents. *See* note 24 *infra.* Second, there is no evidence in this case of any particular grounds for the agency to fear disbursal of the FOIA-exempt information to persons other than the attorney. Finally, the restrictions in this case apply *broadly* to FOIA-exempt information and therefore do not present the narrower question whether a particularized restriction applying to certain kinds of FOIA-exempt information, *i.e.,*

exemption 1 (national security); exemption 4 (trade secrets); exemption 5 (intra-governmental memoranda); would be legitimate under the balancing process set forth *infra* at pages 31–35.

6. Joint Statement of Material Facts Not in Genuine Dispute ¶¶ 1, 2; Appendix ("App.") 80.

7. *Id.* ¶ 6; Exhibits A, B; App. 80, 82, 83.

8. *Id.* ¶ 7; App. 81.

9. *Id.* ¶ 8; Exhibits C, D; App. 81, 84, 85.

10. *Id.* ¶ 9; Exhibit E; App. 86–88.

Any requests under the Freedom of Information Act should not be responded to until I have been informed of the nature of the request and the information that you propose to release in response to that request. I will then consult with the Office of General Counsel concerning the release of the information. This restriction is intended to allow the Federal Government to assert any exemptions that it may be entitled to under the Freedom of Information Act (5 C.F.R. § 735.206).

. . . .

5. If you or your employees have already provided information or documents to the attorney, either directly or indirectly, I want a report concerning all oral information provided and a copy of all such documents delivered to me by February 26.

The memorandum concluded by warning that "immediate and appropriate disciplinary action [would be taken] to assure that the government's interests are protected." [11] It was explained that "[s]enior-level managers of the Department of Justice [DOJ] will not be permitted to take actions which violate DOJ regulations or impinge upon the ability of DOJ counsel to effectively defend the Government in litigation." [12]

On February 26th, the deadline for complying with paragraph 5 of the February 24th memorandum was extended to March 1, 1982 in order to allow appellants to consult with their attorney about the memorandum. [13] On March 1st, appellants filed suit in the United States District Court against Lauer and the OJJDP, alleging that the restrictions in the February 24th memorandum "violate plaintiffs' constitutional right to unimpeded access to the courts; violate plaintiffs' First Amendment right to speak and communicate with their lawyer and with others; violate plaintiffs' First

Amendment right to freely associate with others for the purpose of instituting legal action; violate plaintiffs' constitutional right to privacy in the lawyer-client relationship; and violate rights guaranteed to plaintiffs by the Civil Service Reform Act of 1978, 5 U.S.C. Secs. 2301 and 2302." [14] Martin and West sought a temporary restraining order, as well as preliminary and permanent injunctive relief, but Judge Richey directed the parties to explore an informal resolution of the dispute. Counsel met on March 2nd, and on March 4th, Lauer issued a "Clarification Memorandum," extending the deadline set by paragraph 5 of the February 24th memorandum until the parties or the courts resolved the dispute, and narrowing paragraph 3 to prohibit appellants

from disclosing any Government information which could be subject to the Privacy Act and that may result in an unwarranted invasion of personal privacy if it is released. This includes information contained in the official personnel file of an agency employee (other than your own file) or any other information which may have identifying characteristics to a particular employee and which may amount to an unwarranted invasion of personal privacy if released. Any questions concerning particular information should be presented to me or to the Office of General Counsel. Because of the inherent conflict between your duties as a manager and Government employee and your participation in the preparations for the proposed lawsuit, it would be improper for you to make a decision concerning the release of any such information. This modification is effective until further notice. [15]

Appellants, in turn, withdrew their application for a temporary restraining order "[b]ecause it appear[ed] that defendant Lauer's second memorandum [would] pre-

11. *Id.* Exhibit E; App. 88.

12. *Id.*

13. Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, Exhibit F; App. 39.

14. Complaint ¶ 12; App. 6.

15. Joint Statement of Material Facts Not in Genuine Dispute, Exhibit F; App. 89–91.

serve the *status quo ante* pending [the District] Court's resolution of this case on the merits . . . . "[16]

■ Although the clarification memorandum appeared to narrow the issues in this case, the government's brief opposing appellants' motion for a preliminary injunction made clear that the government would return to the broader requirements of the February 24th memorandum if it prevailed before the district court.[17] In its opinion denying appellants' motion for a preliminary injunction and dismissing the case on the merits, however, the district court strongly suggested that such a broad restriction would be invalid. The district court emphasized that because the Lauer memorandum impinged on appellants' first amendment rights, it could only be upheld insofar as it was narrowly drafted to protect valid governmental interests.[18] Reading the February 24th memorandum as incorporating the clarifications of the March 4th memorandum, the district court concluded that appellants were not entitled to relief and dismissed their case.[19]

Following the district court's order, Lauer forwarded a memorandum to appellants indicating that, in his view, the district court's order permitted the agency to

prescreen and require post-hoc disclosure of both documents and information given by appellants to their attorneys.[20] In a motion for clarification, appellants requested the district court to make clear that requiring disclosure of information communicated to their attorneys would impermissibly intrude on attorney-client communications and was proscribed by the district court's original opinion. The district court rejected this argument, and issued a clarifying order specifying that appellants "may not disclose, without prior approval from the government, any government documents, or information contained in those documents, which could be subject to the Privacy Act and that may result in the unwarranted invasion of personal privacy if it is released. Nor can plaintiffs respond to any Freedom of Information Act requests without defendants' approval." The order also stated that "plaintiffs must disclose to the defendants any government documents, or information contained in those documents, *which has already been revealed to plaintiffs' counsel*, which could be subject to the Privacy Act, or exempt under the Freedom of Information Act, or could result in the unwarranted invasions [sic] of personal privacy if it is released."[21]

---

**16.** App. 40.

**17.** Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for a Preliminary Injunction at 4; App. 51. The government's position appears to have been that the clarification memorandum withdrew any need for preliminary injunctive relief, but that appellants' case on the merits should be decided with respect to the original memorandum.

**18.** *Martin v. Lauer*, Civ. Action No. 82–587 (D.D.C. Mar. 19, 1982), Mem. Op. at 5–6; App. 99–100.

**19.** *Id.* In addition, the district court rejected appellants' argument that enforcement of the Lauer memorandum would violate appellants' rights under the "whistleblowing" provisions of the CSRA. 5 U.S.C. § 2301. The district court explained that those provisions only work as a defense to disciplinary action. *See Martin v. Lauer*, Civ. Action No. 82–587 (D.D.C. Mar. 24, 1982), Mem. Op. at 6; App. 100. *See generally Borrell v. United States Int'l Communications*

*Agency*, 682 F.2d 981, 987 (D.C.Cir. June 22, 1982), slip op. at 10. Since we agree with this characterization of the CSRA, we need not consider the merits of the district court's suggestion that the information covered by the Lauer memorandum does not fall within the protection of the whistleblower statute because disclosure is *"prohibited by law." Martin v. Lauer*, Civ. Action No. 82–587 (D.C.C. Mar. 19, 1982), Mem. Op. at 6; App. 100. We note, however, that the Senate Report accompanying the whistleblower provisions indicates that the exclusion for disclosures which are "prohibited by law" applies only to statutes and not to regulations. *See* S.Rep.No. 969, 95th Cong., 2d Sess. 21 (1978).

**20.** *See* Motion for Clarification of March 19, 1982, Order or, Alternatively, For a Stay, Exhibit A; App. 106.

**21.** *Martin v. Lauer*, Civ. Action No. 82–587 (D.D.C. Mar. 24, 1982) (emphasis original); App. 107.

On March 25th, appellants filed their notice of appeal to this court[22] and, on March 30th, moved this court to stay the order of the district court insofar as it required them to disclose their prior communications with counsel. On April 2nd, we denied appellants' motion insofar as it concerned documents "physically transferred or shown to their attorneys," but temporarily enjoined the remainder of the disclosure requirement.[23] On April 5th, Martin and West reported to Lauer all documents they had disclosed to their attorneys. On April 6th, we enjoined any requirement of additional disclosures by appellants pending decision on the merits of their appeal from the district court's order.[24]

## II. Issues Presented on Appeal

As we read the district court's order, and the preceding sequence of events, it provides that the agency may discipline appellants only in accordance with the district court's narrow interpretation of the Lauer memorandum. Under this interpretation, appellants are prohibited from disclosing, without prior approval from the government, any government document or information contained in such document "which could be subject to the Privacy Act and that may result in an unwarranted invasion of personal privacy if it is released." The restrictions also require appellants to disclose to the agency any government documents or information contained therein, which has already been revealed to counsel, which could be subject to the Privacy Act, a FOIA exemption, or which could result in

an unwarranted invasion of personal privacy. The district court pointed out, however, that the restrictions do not

restrict the plaintiffs from conversing regarding their own personal knowledge and experiences of the circumstances surrounding the challenged RIF. Nor does it prohibit the plaintiff from obtaining government documents that may be relevant to the lawsuit. . . . [25]

On appeal, the issues in this case are somewhat narrower. First, the government concedes that the proscription regarding information the disbursal of which would cause an unwarranted invasion of privacy should not be interpreted to include information that is not exempt under FOIA.[26] Furthermore, the government concedes that the term "could" in the district court's order only serves to put appellants at their risk in assessing whether information falls within the scope of a FOIA exemption, or the Privacy Act's provisions.[27] Appellants argue nonetheless that even under this narrow reading, the Lauer memorandum violates their constitutional and statutory rights.

As we explain, *infra*, we disagree with the district court's conclusion that appellants may be broadly required to disclose information they have conveyed to their attorneys that falls within an exemption to the Freedom of Information Act. We believe it improper, however, to consider on appeal the district court's order with respect to material covered by the Privacy

**22.** App. 109.

**23.** *Martin v. Lauer*, Civ. Action No. 82–587, *order granting temporary stay in part*, No. 82–1322 (D.C.Cir. Apr. 2, 1982).

**24.** Because appellants have already disclosed to the agency any documents that they may have shown to their attorneys, there is no live controversy over the permissibility of requiring disclosure of documents *previously* shown to appellants' attorney. Furthermore, there may not be any live controversy over the prospective ban on disclosing documents. As we explain *infra* at page 31, the prospective portion of the Lauer memorandum, as construed by the district court, only concerns Privacy Act

related material that is not clearly being contested by the parties. Consequently, this opinion does not need to address the legitimate interests of government agencies to require their employees to comply with applicable regulations for the disbursal of government documents.

**25.** *Martin v. Lauer*, Civ. Action No. 82–857 (D.D.C. Mar. 19, 1982), Mem. Op. at 5; App. 99.

**26.** *See* Government's Brief 40 n.27.

**27.** *See id.* at 40.

Act.[28] Although appellants vigorously contest the Privacy Act exclusions on appeal, they indicated to the district court that they had "no quarrel with Privacy Act exclusions."[29] From the briefs before us on appeal, it appears that this shift of position may be attributable to appellants' belief that they are currently under court order to disclose such information, and that failure to do so could subject them to contempt.[30] Since we read the district court's order as simply allowing the agency to discipline appellants for failure to comply with the Lauer memorandum, as construed by the district court, appellants' fears are no longer justified. We also decline to reach this question on review because the issue of whether the government may safeguard information falling within the purview of the Privacy Act by means that intrude into attorney-client communications is exceedingly difficult and would benefit from a full airing before a trial court. Proper resolution of this question may depend on the type of Privacy Act information to which appellants have access, evidence of the propensity of appellants and their attorneys to publicly disclose such information, and whether transmittal of information from a government employee to his attorney constitutes a "disclosure" within the meaning of the Privacy Act. On remand, the district court should determine whether the Privacy Act restrictions are in fact contested in this case, and if so, should assess whether there are any disputed facts that would aid the court's resolution of this difficult issue.

Thus, the only question remaining for our consideration is whether the district court properly held that appellants could be required, under threat of dismissal, to disclose to the agency any information they have provided counsel that is exempt from disclosure under the Freedom of Information Act. We now turn to that question.

### III. RESTRICTIONS IMPOSED ON FOIA-EXEMPT INFORMATION

■ Although government employees do not shed their first amendment rights on assuming public responsibilities, the scope of their right to speak freely is narrower than that of private citizens. As the Court has often repeated:

> The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting on matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). *Accord Mount Healthy Board of Education v. Doyle*, 429 U.S. 274, 284, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); *CSC v. Letter Carriers*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2889, 37 L.Ed.2d 796 (1974). This balance will differ according to the type of speech,[31] the nature of the agency,[32] and the context in which the speech is uttered.[33] In this case, the context of the

---

**28.** Because the district court's order at times suggests that its proscription for disclosures that constitute an unwarranted invasion of personal privacy is conjunctive with its proscription for disclosure of information within the Privacy Act, we also decline review of that aspect of the district court's order. On remand, the district court should clarify this aspect of its order so that the parties may address their arguments accordingly.

**29.** Supplemental Appendix ("Supp. App.") 33.

**30.** *See* Appellants' Brief 17.

**31.** For example, in *Foster v. Ripley*, 645 F.2d 1142, 1148–49 (D.C.Cir.1981), we distinguished between speech concerning matters of general public interest and speech designed to advance the personal interests of the employee. We

noted that the employee's speech interest is entitled to "more weight" when he is speaking on a matter of general concern. *Id.* at 1148.

**32.** *See, e.g., Janusaitus v. Middlebury Volunteer Fire Department*, 607 F.2d 17, 26 (2d Cir. 1979) (nature of firefighting function requires close coordination and common loyalty).

**33.** *See Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415 n.4, 99 S.Ct. 693, 696 n.4, 58 L.Ed.2d 619 (1979) ("Although the First Amendment's protection of government employees extends to private as well as public expression, striking the *Pickering* balance in each context may involve different considerations."). In *Givhan*, the Court suggested that private expression on the job might pose problems for efficient management. In contrast,

speech is of utmost importance. Since the Lauer memorandum works to restrict communications between government employees and their attorneys, it implicates the fundamental right of those employees to meaningful access to the courts. Absent grounds to believe that discussions in this limited context would significantly impair any governmental interest, we conclude that the Lauer memorandum provisions, as applied to FOIA-exempt information violate appellants' first amendment rights. We emphasize, however, that this conclusion pertains only to the communications made to the employees' attorneys and not to any subsequent use made of those communications. Were the employees to reveal the FOIA-exempt information to others, or to authorize their attorney to do so, the balance between the government's interests and the employees' might well shift.[34]

### A. Appellants' Speech Interests

■ Appellants' interest in speaking freely with their attorneys is interwoven with their right to effective assistance of counsel. "Meaningful access to the courts is a fundamental right of citizenship in this country." *Porter v. Califano*, 592 F.2d 770, 780 (5th Cir. 1979). Indeed, all other legal rights would be illusory without it. *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir. 1973). Thus, while private parties must ordinarily pay their own legal fees,[35] they have an undeniable right to retain counsel to ascertain their legal rights. *See Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1117–19 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

■ Restrictions on speech between attorneys and their clients directly undermine the ability of attorneys to offer sound legal advice. As the common law has long recognized, the right to confer with counsel would be hollow if those consulting counsel could not speak freely about their legal problems.[36] Through the attorney-client privilege, the common law "encourage[s] full and frank discussions between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and the administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends on the lawyer being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Limitations on the attorney-client privilege have therefore been drawn narrowly, to remove the privilege only where the privileged relationship is abused.[37] Absent such abuse, or a waiver of the privilege,[38] our legal system jealously protects the confidential status of attorney-

---

the private expression that the government seeks to regulate in this case takes place off the job. As we discuss *infra*, the context of the speech is relevant in this case to the strength of the employee's speech interest and the strength of the government's interest in regulating that speech.

**34.** We note, as well, that if the agency had cause to believe the employees or the attorney contemplated such use, it might seek a protective order from the court.

**35.** *Compare Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), *with United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973).

**36.** Indeed, impairment of communications between attorneys and their clients may be unconstitutional as a denial of the right of access to the courts. *See, e.g., Potashnick v. Port City Constr. Co.*, 609 F.2d at 1117–19 (trial court's instructions to counsel barring discussions with party-witness invalid under the Fifth Amendment); *Taylor v. Sterrett*, 532 F.2d 462, 473–75 (5th Cir. 1976) (mail from inmates to attorneys may not be opened; mail from attorneys to inmates may only be inspected for contraband in the presence of the inmate). Because we decide this case on first amendment grounds, we do not decide whether appellants' due process rights require invalidation of the Lauer memorandum.

**37.** *See, e.g., Clark v. United States*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933); *In the Matter of a Grand Jury Subpoena Served on David Doe*, 551 F.2d 899, 902 (2d Cir. 1977). *Cf. Moody v. IRS*, 654 F.2d 795, 799–800 (D.C.Cir. 1981) (work product privilege does not apply to memorandum concerning an ethically improper meeting).

**38.** *See, e.g., In re Sealed Case*, 676 F.2d 793, 817–18 (D.C.Cir.1982).

client communications. Although an adversary may ordinarily inquire as to what the client knows, he " 'cannot [compel him] to answer the question "What did you say or write to your attorney?".' " *Upjohn Co. v. United States*, 449 U.S. at 396, 101 S.Ct. at 686 (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D.Pa. 1962)).

In this case, the government suggests that appellants have no legitimate interest in discussing "government infoı mation" with counsel. It argues that appellants, like other litigants, may request government information through standard FOIA and discovery procedures. Any claim of right to discuss such matters with counsel prior to formal receipt of the information, it suggests, is merely a plea for "special treatment."[39]

■ The government's argument ignores appellants' legitimate interest in an early assessment of their legal rights. "The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Upjohn Co. v. United States*, 449 U.S. at 390–91, 101 S.Ct. at 683. Maintaining the confidentiality of attorney-client communications facilitates this process by encouraging the client to supply his attorney with relevant information. *Id.* If the client were to "act at his peril,"[40] in pre-screening information that may be exempt from FOIA, however, these initial consultations could be seriously hampered. Because of the complexity of the law concerning FOIA exemptions, the client might unduly restrict his discussion of non-exempt information.[41]

Thus, we conclude that appellants' speech interests are not only legitimate but, because they implicate appellants' fundamental right of access to the courts, are deserving of rigorous protection. Following the approach of *Pickering* and its progeny, we must now examine the government's interest in restricting appellants' speech in order to determine whether the Lauer memorandum passes constitutional muster.

### B. *The Government's Interest in Nondisclosure*

■ Although the Freedom of Information Act is a *disclosure* statute rather than a *withholding* statute, *see Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), it recognizes specific public and private interests in limiting disclosure.[42] A decision whether to release FOIA-exempt material, therefore, requires a considered balancing of the public's interest in disclosure of particular material and the interests in nondisclosure acknowledged by the statutory exemptions. Regulations governing the processing of FOIA requests serve to assure that such an accommodation of competing interests will occur prior to the release of government information.[43] We do not doubt that, in general, these regulations serve substantial governmental interests. As one commentator has explained:

> [L]egitimate government functions . . . can be seriously harmed if confidential information is disseminated. For example, disclosure of investigative files might forewarn a violator and allow him to

---

**39.** *See* Government's Brief 35.

**40.** *Id.* at 40.

**41.** We also note that while the "whistleblower" provisions of the CSRA, 5 U.S.C. § 2301, are not directly applicable to this case, *see* note 19 *supra*, they are supportive of the public interest in encouraging unhampered discussions between government employees and their attorneys. A government employee deciding whether to "blow the whistle" on government fraud, waste, abuse or illegality must ascertain whether disbursal of the information that supports his charges is "prohibited by law." If disbursal

is not prohibited by law, and the employee is subjected to a retaliatory discharge, the CSRA provides him with a defense to that discharge. Thus, the legal question whether disclosure is prohibited by law is of critical importance to the whistleblower. Surely, he must be allowed to consult his attorney for an answer to that question absent some strong governmental interest in limiting such communications.

**42.** *See* 5 U.S.C. § 552(b).

**43.** *See* 28 C.F.R. 16.1 *et seq.*

escape arrest or indictment. Similarly, publication of certain economic information, such as a Securities and Exchange Commission decision to suspend trading in a certain corporation's stock, might provide some parties with an unfair advantage if released early. Revelation of the proceeding of legitimately confidential government hearings or meetings might disrupt decisionmaking, since officials might then be afraid to air their true views. Finally, dissemination of defense secrets might cause loss of lives or endanger security.

Comment, *First Amendment Standards for Subsequent Punishment of Dissemination of Confidential Information*, 68 Cal.L.Rev. 83, 87 (1980). The strength of the government's interest, however, varies according to the nature of the information and the likelihood of public dissemination. Thus, the government's interest in nondisclosure is generally greater when a specific statute prohibits dissemination of information. *See, e.g.,* 5 U.S.C. § 552b (Privacy Act); 18 U.S.C. § 1905 (Trade Secrets Act). And the interest is perhaps greatest when government information concerns national secrets. *See Snepp v. United States,* 444 U.S. 507, 509 n.3, 100 S.Ct. 763, 765 n.3, 62 L.Ed.2d 704 (1980) ("The Government has a compelling interest in protecting both the secrecy of information important to our national security and the *appearance of confidentiality* so essential to the effective operation of our foreign intelligence service." (Emphasis added.)). In contrast, there is a lesser government interest in preventing dissemination of much of the information covered by exemption two—information relating solely to internal personnel rules and practices. 5 U.S.C. § 552(b)(2). Although exemption two is in part designed to screen out illegitimate public inquiries into the functioning of an agency, *see Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1065 (D.C.Cir.1981) (*en banc*) (exemption two covers all internal personnel matters that are not " 'the subject of legiti-

mate public interest' ") (quoting *Vaughn v. Rosen,* 523 F.2d 1136, 1142 (D.C.Cir.1975)), it also serves to relieve the agency from the administrative burden of processing FOIA requests when internal matters are not likely to be the subject of public interest. *See Vaughn v. Rosen,* 523 F.2d at 1150 (Leventhal, J., concurring). To the extent that matters are exempted from disclosure under exemption two on grounds of administrative burden, the exemption certainly does not represent a government interest in preventing employees from openly discussing such "government information."

 Thus, even with regard to *public dissemination* of FOIA-exempt information, the government does not always have an interest in preventing ad hoc disclosures of "government information." We therefore question whether an across-the-board limitation on *public* discussion of FOIA-exempt matters would be valid. This case, however, concerns a far more limited type of disclosure—the discussion of information within the attorney-client context. Here, the government may protect its interest in prohibiting public disbursal of any sensitive information without intruding on the employee's substantial interest in freely discussing his legal rights with his attorney. Because the attorney is bound to maintain the confidence of his client, *see* Code of Professional Responsibility DR 4–101, matters disclosed in confidential discussions between the attorney and his client would only become public if the client authorized the attorney to make such a disclosure or the attorney breached his ethical obligations. Arguably, the government could protect its interest in preventing public disclosure of government information by requiring the employee not to authorize any subsequent disclosure of sensitive government information by his attorney.[44] But a broad restriction, undermining the confidentiality of the attorney-client relationship and chilling discussions with counsel in order to protect the government's unclear in-

---

**44.** As we noted *supra* at note 34, the government may protect its interests in appropriate

circumstances by seeking a protective order.

terest in monitoring *all* discussions of FOIA-exempt information cuts too deeply into the employee's first amendment rights. Especially in the absence of any specific allegation that appellants or their attorneys are likely to disseminate government information publicly, we conclude that appellants may not be required to disclose all of their discussions touching on FOIA-exempt information.

### Conclusion

We reverse and remand the district court's order insofar as it denies appellants relief from having to disclose, under threat of discipline, FOIA-exempt matters they may have communicated to their attorney. With respect to the remainder of the order, we remand to the district court to assess whether there is a genuine dispute between the parties and, if so, to reconsider its ruling in light of this opinion.[45]

**45.** Pending further action by the district court, our stay order of April 6, 1982 remains in effect. Thus, the agency is temporarily enjoined from disciplining appellants for failing to disclose oral communications with their attorneys. Under our stay order, the agency may discipline appellants for failing to reveal a document read verbatim to their attorneys since such a communication is equivalent to appellants' showing of the document to their attorneys.