**UNITED STATES of America**

v.

**Julio MORALES–MARTINEZ.**

**Crim. A. No. 87–53–06.**

United States District Court,
D. Vermont.

Sept. 30, 1987.

Jeffrey Behm, Asst. U.S. Atty., Burlington, Vt., for plaintiff.

Mark Oettinger, Bloomberg & Oettinger, Burlington, Vt., for defendant.

## OPINION AND ORDER

BILLINGS, District Judge.

On September 17, 1987 defendant filed a Motion to Quash the Subpoena to Testify Before Grand Jury served upon his attorney after business hours on September 16, 1987. The subpoena sought the attorney's testimony the following day. By telephone on September 17, 1987 the Court approved the parties' agreement to continue the date of the attorney's appearance at the Grand Jury by one week in order to allow the attorney time to prepare argument in support of the motion. The Court heard oral argument on the motion on September 21, 1987.

## BACKGROUND

Defendant and his co-defendants were arrested on the night of July 1–2, 1987 for alleged violations of immigration laws and making false statements to Immigration and Naturalization Service (INS) officers.

Following a recess in defendant's July 6, 1987 detention hearing before the Magistrate, defendant's counsel proffered to the Magistrate a Columbian passport and visa with defendant's name on it. As a result, the Magistrate changed defendant's conditions of release. The government subpoenaed the passport, had it analyzed and now alleges that the passport is fraudulent.

On July 30, 1987 defendant was named with five others in an indictment which charges defendant with knowingly and willfully making a false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the INS in violation of 18 U.S.C. § 1001 and with willfully and knowingly using and attempting to use a false and altered passport in violation of 18 U.S.C. § 1543.

The Grand Jury is now investigating an additional charge against defendant of obstruction of justice in violation of 18 U.S.C.

§ 1503 based upon his attorney's proffer to the Magistrate of the allegedly false passport. The Grand Jury is also investigating additional charges against defendant's co-defendants stemming from the acquisition and proffer of the allegedly false passport.

On September 16, 1987 the government served defendant's attorney with a subpoena. The government seeks to present the attorney to the Grand Jury as a witness against his client and others to answer the following questions: "Where did you get your client's passport?" and "What was the content of your discussion with your client before you proffered the passport to the Magistrate?"

### DISCUSSION

We are presented with the precise questions the government seeks to ask defense counsel and we consider them individually.

A. "Where did you get your client's passport?"

■ The government contends that the subject of this question is not information that falls within the attorney-client privilege. Movant hardly disputes that the information is not privileged. Since under the circumstances the attorney's source for the passport could not have been the client, this is not the type of disclosure with which the attorney-client privilege is concerned. The privilege protects just and effective representation of clients by allowing them to speak frankly to their representative without fear that their disclosures will be used against them. *See Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). This was not a disclosure from client to attorney, so the information sought by this question is not privileged.

The question then is, absent attorney-client privileged material, what showing, if any, beyond the relevance of the subject matter, *cf. In Re Liberatore,* 574 F.2d 78, 82–83 (2d Cir.1978) (burden is movant's), need the government make to justify its subpoena to a criminal defense lawyer to testify against the attorney's client and other targets. Relevant to the answer is the fact that Movant has been under indictment on related charges for nearly two months and has been represented by his current attorney on those charges since at least his initial appearance before the Magistrate on July 6, 1987.

Movant argues essentially that, because this extraordinary request will seriously interfere with his relationship with his client and may even force his disqualification, in addition to showing that the information sought is relevant to the matter under investigation, the government should be required to show that the information is necessary to its prosecution.

The Second Circuit sitting *en banc* recently ruled in a case raising similar questions. In *In Re Grand Jury Supoena Served Upon Doe,* 781 F.2d 238 (2d Cir. 1986) (*en banc*), *cert. denied,* —— U.S. ——, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986) a defendant moved to quash a subpoena *duces tecum* served on his attorney. The subpoena commanded the attorney to appear and produce records of fees and other property received by him or any of his associates on his behalf from or on behalf of a number of individuals including the client in connection with nine different criminal proceedings. *Id.* 781 F.2d at 242. When the subpoena was originally served, the client had not yet been indicted. Following the District Court's denial of the motion to quash and a Second Circuit panel's reversal of that decision, the client was indicted on a number of charges, but not on the RICO charge in connection with which the grand jury sought information from the attorney. *Id.* at 242–243. As a result, when the Court reconsidered the appeal *en banc* it considered separately the pre- and post-indictment questions of what the government must establish in order to enforce a subpoena on the attorney for a target or defendant. *Id.* Here, we are interested in the post-indictment situation.

■ Since Movant in the instant case is already under indictment on charges related to the matters which the Grand Jury is currently investigating, his Sixth Amendment rights have attached. *Id.* at 250, citing *Kirby v. Illinois,* 406 U.S. 682, 688,

92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972) (Plurality opinion). In the *Doe* case, the court held that while no common law privilege protects the attorney's disclosures,

> the Sixth Amendment assures [Movant] the right to be free of unduly burdensome interruption of his counsel's trial preparation and protects him from any unnecessary or arbitrary disqualification of his counsel.

*Id.* 781 F.2d at 250. In *Doe* the subpoena was for production of documentary evidence and the court held that

> [a]ssessment of whether the subpoena is unreasonable or burdensome, especially when sought to be enforced against counsel for an indicted defendant, can be determined under the standards of [Fed. R.Crim.P.] Rule 17(c), informed by Sixth Amendment considerations.

The Court added that

> [t]he risk of disqualification should remain for determination at an *in limine* hearing by the trial judge who must weigh the probative value of the information the government seeks against the loss of counsel of the accused's choice.

*Id.*

■ Since the instant case does not involve a Rule 17(c) subpoena, *Doe* does not speak directly to our situation. Nevertheless, from *Doe* we read our Sixth Amendment inquiry at this stage of the proceedings to be concerned with protecting movant from "unduly burdensome interruption of his counsel's trial preparation ..." *Id.* Noting that a trial date has not been set regarding the pending charges against Movant, we cannot find that counsel's brief appearance in Burlington will significantly burden his trial preparation. The motion to quash is therefore denied as to the first question.

> B. "What was the content of your discussion with your client before you proffered the passport to the Magistrate?"

■ The parties do not dispute that the information sought by this question would ordinarily fall squarely within the attorney-client privilege. The government contends, however, that the information sought is covered by the crime-or-fraud exception to the privilege. *See, e.g., In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038 (2d Cir.1984); *Matter of Doe,* 551 F.2d 899, 900–901 (2d Cir.1977); *United States v. Friedman,* 445 F.2d 1076, 1086 (9th Cir. 1971); *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933).

> [T]he attorney-client privilege does not extend to communications between attorney and client where the purpose of what communication is to further the crime charged in the indictment or future intended illegality ... Future intended illegality or furtherance of present, continuing illegality need not be shown beyond a reasonable doubt before the privilege can be defeated; it suffices to make out a prima facie case ... The Attorney need not himself be aware of the illegality involved; it is enough that the communication furthered, or was intended by the client to further, that illegality.

*United States v. Friedman,* 445 F.2d at 1086 (citations omitted). This framework has been refined somewhat and it is now clear that to overcome a claim of privilege the government must make a showing sufficient to give "a prudent person ... a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1039.

■ Based on the government's proffer at oral argument as to its analysis of the passport, to which proffer defendant did not object, we find that a reasonable basis exists to suspect the perpetration of a crime or fraud. The conversation sought by the government occurred moments before the attorney returned to the courtroom to proffer the allegedly phony passport to the Magistrate on his client's behalf, completing the alleged crime. Based on their proximity in time and place to the alleged crime, we find that a reasonable basis exists to suspect that the communications sought were in furtherance of the alleged crime. As a result, we find that the communication sought falls within the

crime-or-fraud exception to the attorney-client privilege and is therefore not privileged.[1]

 Having determined that the communication sought by the question is not privileged, we undertake the same inquiry we made as to the first question. That is, whether providing the testimony the government seeks will be an "unduly burdensome interruption of [movant's] counsel's trial preparation." *Doe,* 781 F.2d at 250. As we did with the first question, we conclude that testimony as to this question will not be a significant burden on counsel's trial preparation. The motion to quash as to the second question is denied.

In view of our denial of the motion to quash and the impending enforcement of the Grand Jury subpoena, we note that the manner of disclosure of the information sought by the government will affect the likelihood of disqualification of movant's present counsel. *See In Re Grand Jury Subpoena Dated January 2, 1985,* 605 F.Supp. 839, 850-53, *rev'd on other grounds,* 767 F.2d 26 (2d Cir.1985). We are concerned about the strain on the attorney-client relationship as well as the serious risk of disqualification created by an attorney's testimony before a grand jury investigating his client. *See, id.; Doe,* 781 F.2d 238, 252-263 (Feinberg, C.J. and Cardamone, J., dissenting). But the *en banc* Second Circuit indicates to us that even as to a post-indictment grand jury subpoena we are not to view these concerns as constitutionally significant. *Id.* at 249-250. Therefore, we simply note that one way the strain on the attorney-client relationship and the risk of disqualification may be minimized is through the offering of counsel's testimony by stipulation. *See In Re Grand Jury Subpoena Dated Jan. 2, 1985,* 605 F.Supp. at 850-851.

### CONCLUSION

In light of the foregoing discussion, the motion to quash is DENIED.

SO ORDERED.

The Court examined the attorney's degree of awareness of the truth or falsity of his client's assertions in a context where the attorneys themselves were the targets of a Grand Jury investigation of their alleged aiding and abetting, suborning of perjury by, and conspiracy with their clients. It was in connection with a prima facie case as to the charges against the attorneys that the court examined the attorneys' knowledge and found it insufficient to overcome the privilege. Here we have no claim of wrongdoing on the part of the attorney and we see no reason to depart from the general rule as set forth above.

---

**1.** Defendant argues that his attorney had no knowledge of the alleged crime in which the attorney was participating. Recognizing that the general rule in this situation is that "An attorney's ignorance of his client's misconduct will not shelter that client from the consequences of his own wrongdoing," *In re Sealed Case,* 754 F.2d 395, 402 (D.C.Cir.1985), defendant refers to at least one case, *In Re Grand Jury Subpoena* (Legal Services Center), 615 F.Supp. 958 (D.Mass.1985), in which attorney knowledge was relevant to applicability of the crime-or-fraud exception. In that case the government subpoened counsel's files related to their representation of their clients in INS proceedings.