Daniel S. JACOBS, Plaintiff,

v.

Lois J. SCHIFFER, Defendant.

No. Civ.A. 97–506(TPJ).

United States District Court,
District of Columbia.

April 16, 1999.

Jonathan Robert Turley, Nat. Law Center, Washington, DC, Robert A. Van Kirk, Kathleen L. Jennings, Williams & Connolly, Washington, DC, for plaintiff.

Marsha Stelson Edney, Susan Kay Rudy, U.S. Department of Justice, Washington, DC, John Joseph Halloran, Jr., Speiser Krause, Arlington, VA, for Lois J. Schiffer, defendant.

Elaine Debra Kaplan, Gregory James O'Duden, Joanne Royce, Joanne Royce, Government Accountability Project, Washington, DC, for Public Employees for Environmental Responsibility, National Treasury Employees Union, Government Accountability Project, movants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

### I.

Plaintiff Daniel Jacobs is a journeyman trial lawyer at the Environment and Natu-

ral Resources Division ("the Division"), Environmental Enforcement Section ("the Section"), of the U.S. Department of Justice ("the DOJ"). Defendant Lois Schiffer is the assistant attorney general in charge of the Division and of Mr. Jacobs. In the course of his duties Mr. Jacobs developed qualms about the propriety of certain strategies and tactics that he saw the Section employ in cases to which he was assigned, and he reported his misgivings to his supervisors—ultimately, to Ms. Schiffer. Coincidentally or not, at around this time Jacobs' superiors lowered his performance rating and transferred him against his wishes.

In consequence Jacobs consulted a private attorney. He would like the attorney to advise him whether the conduct that he reported within the DOJ constituted wrongdoing, whether his superiors improperly retaliated against him, and what public disclosures he might lawfully make under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8). The attorney has understandably concluded that he cannot answer such questions until Mr. Jacobs provides details about the conduct he observed, the reports that he made to his superiors, and their responses. The attorney has also asked to see the internal DOJ documents that Jacobs says support his version of events.

As matters presently stand, although Jacobs has possession of copies of the relevant documents, the attorney has not looked at them, nor has he allowed Mr. Jacobs to impart any FOIA-exempt[1] (hereinafter "nonpublic") information to him orally. The attorney has inquired of Ms. Schiffer whether she would object if Mr. Jacobs disclosed the necessary information to him. In two different letters, Ms. Schiffer has replied in substance that any disclosure Mr. Jacobs proposes to make of any nonpublic information that he has acquired in his capacity as a government lawyer is controlled by departmental rules and regulations, as well as by statute. Neither his purpose in disclosing the information nor the identity of the recipient alters the requirements precedent to its authorized disclosure. In order to obtain the DOJs' acquiescence, Mr. Jacobs first must make a formal request, identifying exactly what he proposes to reveal. The DOJ will then decide whether or not to authorize its disclosure.

Mr. Jacobs believes that Ms. Schiffer's response implies a threat to subject him to disciplinary action if he reveals any nonpublic information, even to his attorney, without prior authorization. While neither of the letters on which Mr. Jacobs bases his apprehensions mentions in so many words the possibility of disciplinary action as a consequence of unauthorized disclosure,[2] Ms. Schiffer has, throughout this litigation, maintained her authority to discipline Mr. Jacobs if his conduct warrants, including a breach of confidentiality.[3]

---

**1.** "FOIA" refers to the Freedom of Information Act, 5 U.S.C. § 552. Most, if not all, of the information that Mr. Jacobs would like to show his attorney is exempt from the disclosure requirements of FOIA. See 5 U.S.C. § 552(b)(2), (b)(5), (b)(7)(A), and (b)(7)(E).

**2.** See Ex. F to Pl.'s App. for Prelim.Inj. ("[Y]our present request is not sufficiently specific to meet the Department's FOIA regulations. If you or Mr. Jacobs decide to file a FOIA request, it will be evaluated in accordance with [those] regulations."); Ex. M to Pl.'s App. for Prelim. Inj. ("[W]e know of no authority under which the types of communications described in your letters are excepted from the general restrictions on the release of confidential information.").

**3.** See, e.g., Def.'s Opp'n to Pl.'s App. for Prelim.Inj. at 16 ("[I]t should be undisputed that the Department has a compelling interest in requiring employees, and others, to pursue processes—whether under Touhy regulations, DOJ Order, or FOIA—that allow the government to consider, in advance of disclosure, whether its authorization for disclosure of its own documents should be granted or withheld."). After Mr. Jacobs filed his application for a preliminary injunction, the Court asked defense counsel whether his client would moot the application by agreeing not to take disciplinary action against Mr. Jacobs if he shared with his attorney nonpublic information that the attorney needed in order to formulate legal advice. When defense counsel

Mr. Jacobs states three causes of action in his amended complaint. First, he claims that Ms. Schiffer's pre-disclosure clearance requirement violates the First Amendment in that it unjustifiably suppresses speech that relates to matters of significant public concern. Second, he claims that the pre-disclosure requirement violates the First Amendment in that it unjustifiably curtails his freedom to associate with his current attorney and any public-interest lawyers who might agree to advise him on a *pro bono* basis. Finally, Mr. Jacobs claims that the requirement violates the Fifth Amendment in that it unjustifiably restricts his access to the courts by hindering his ability to receive legal advice.[4]

The case is presently before the Court on cross-motions for summary judgment. The Court must therefore render judgment at this stage "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." Fed.R.Civ.P. 56(c). The parties agree that there is no genuine issue as to any material fact, although, each having made *ex parte* submissions for *in camera* consideration by the Court, both are unaware of certain facts that bear upon the Court's decision.

## II.

Ms. Schiffer contends that she personally has imposed no restriction on Mr. Jacobs' speech. In support of this contention, she cites various statutes and regulations that, as she reads them, prohibit government employees from unilaterally disclosing nonpublic information to anyone without authorization and make no exceptions for communications to a private attorney for the purpose of securing personal legal advice.[5] Here Ms. Schiffer overreaches, however, for while her position *vis-à-vis* Jacobs apparently applies to all of the nonpublic information he possesses, regardless of its type or the use to which he would put it, the statutes and regulations themselves limit their scope either to certain types of nonpublic information[6] or certain uses.[7]

---

returned to court, he reported in chambers that his client would not agree to curtail her freedom of action in the way the Court had proposed.

4. Mr. Jacobs also complains that Ms. Schiffer has improperly restricted his ability to disclose nonpublic information to the Office of the United States Special Counsel ("OSC"). He does not allege, however, that anyone at the Division ever stated or implied that he could not divulge nonpublic information to the OSC without prior authorization from the Division. In a brief filed before the Court, Mr. Jacobs seems to acknowledge that the only way Ms. Schiffer has interfered with his ability to communicate with the OSC is by limiting the ability of Mr. Jacobs' attorney to participate in those communications. *See* Pl.'s Reply in Supp.2d Mot.Prelim.Inj. at 5. Consequently, the Court does not read the portion of the amended complaint that concerns communications with the OSC to allege an independent form of restraint. Rather, the Court reads that portion as simply supporting Mr. Jacobs' claim that Ms. Schiffer has deprived him of necessary legal advice.

5. Ms. Schiffer cites the following statutes and regulations: 5 U.S.C. § 552a(b) and 28 C.F.R. § 16.57(b) (the Privacy Act and parallel DOJ regulations); 7 U.S.C. § 136h and 18 U.S.C. § 1905 (concerning the disclosure of trade secrets and confidential commercial or financial information); 18 U.S.C. § 641 (concerning the conversion or disposal of government property); 18 U.S.C. § 2071 (concerning the removal of government documents) 18 U.S.C. § 3322(a)(1) (concerning the disclosure of grand jury information in banking cases); 44 U.S.C. § 3105 (requiring agency heads to establish safeguards against the removal of government records); DOJ Order 2710.8A (implementing 44 U.S.C. § 3105); 5 C.F.R. § 2635.703 (prohibiting a government employee from using nonpublic information for private gain); 28 C.F.R. §§ 16.21–16.29 (concerning the disclosure of DOJ material in federal and state proceedings); Fed.R.Crim.P. 6(e)(2), (3) (concerning the disclosure of matters occurring before a federal grand jury).

6. *See* 5 U.S.C. § 552a(b) and 28 C.F.R. § 16.57(b) (information concerning individuals); 7 U.S.C. § 136h and 18 U.S.C. § 1905 (trade secrets and confidential commercial or financial information); 18 U.S.C. § 3322(a)(1) and Fed.R.Crim.P. 6(e)(2), (3) (grand jury information).

Even in the aggregate, these rules do not achieve the absolute embargo that Ms. Schiffer imposes by insisting upon clearing in advance everything that Jacobs would impart to his lawyer. In fact, it is clear on this record that Mr. Jacobs could show his attorney some, if not all, of the documents that he would like to disclose without violating any statute or regulation.[8]

In addition to the statutory and administrative prohibitions against the release of nonpublic information generally, however, Ms. Schiffer invokes the professional rules governing attorney conduct. As an attorney, she argues, Jacobs is bound as well by ethical constraints not applicable to lay government employees. According to the D.C.Rules of Professional Conduct, "a lawyer shall not knowingly . . . [r]eveal a confidence or secret of the lawyer's client." D.C.RULES OF PROFESSIONAL CONDUCT Rule 1.6(a).[9] Most of the material that Mr. Jacobs would like to impart to his attorney contains confidential and/or secret information that Jacobs obtained in the course of representing his agency client, the Environmental Protection Agency ("EPA"). The question thus posed is whether a government lawyer "reveals" his client's confidences and secrets when he discloses them in confidence to his personal attorney to enable the personal attorney to advise the government lawyer of the latter's rights

and obligations, personally and professionally, and as a potential whistleblower.

In urging the Court to answer this question in the affirmative, Ms. Schiffer refers to Comment 10 to Rule 1.6, which states that "in the absence of consent of the client after full disclosure, a lawyer should not associate another lawyer in the handling of a matter; nor should the lawyer, in the absence of consent, seek counsel from another lawyer if there is a reasonable possibility that the identity of the client or the client's confidences or secrets would be revealed to such lawyer." *Id.* cmt. 10.

In the Court's opinion, Comment 10 is not apposite in the instant context. It adjures a lawyer to obtain consent before revealing his client's confidences or secrets to another lawyer whose advice he seeks in furtherance of his client's interests. Mr. Jacobs is not seeking advice on how to handle his representation of the EPA. Rather, he wants help in charting a course that will protect his rights and the public interest without violating the law or his professional obligations. Therefore, Comment 10 does not speak to the type of counsel that Mr. Jacobs is seeking.

■ More broadly, the Court concludes that a government lawyer does not, under Rule 1.6, "reveal" his client's confidences and secrets when he discloses to his personal attorney—with the express under-

---

7. *See* 18 U.S.C. § 641 (conversion or disposal); 18 U.S.C. § 2071 (removal such as to deprive the government of use); 44 U.S.C. § 3105 and DOJ Order 2710.8A (permanent removal); 5 C.F.R. § 2635.703 (use for private gain); 28 C.F.R. §§ 16.21–16.29 (use in federal and state proceedings).

8. For example, Mr. Jacobs would like to show his attorney a memorandum, entitled "Comprehensive Statement in Support of Request for Review of Performance Appraisal," that Mr. Jacobs sent to Ms. Schiffer in 1995. Ms. Schiffer concedes that Mr. Jacobs would not violate the Privacy Act or the provisions relating to trade secrets by showing this memorandum, including its attachments, to his attorney. *See* Def.'s *In Camera* Resp. to Ct.'s March 13, 1998 Order at 15–16. Her failure

to mention the other statutes and regulations that she cites elsewhere seems less an assertion that any of them would prohibit the disclosure and more an admission that they clearly do not apply. Indeed, none of those rules would prohibit Mr. Jacobs from disclosing the type of nonpublic information involved here in the limited manner that he contemplates. *See supra* notes 6, 7.

9. " 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client." D.C.RULES OF PROFESSIONAL CONDUCT Rule 1.6(b).

standing that the information should go no further—only those confidences and secrets that the latter needs in order to advise the government lawyer of his rights and obligations as a possible whistleblower. The personal attorney becomes, in practical effect, simply a learned *alter ego* of the government lawyer and equally duty-bound to treat the confidences and secrets of the government lawyer's client as his own. An alternative interpretation would effectively deny Mr. Jacobs the ability to obtain legal advice in a situation that places both his employment and his law license in jeopardy. Such an interpretation would seem to place Rule 1.6 in tension with the Fifth Amendment's guarantee of due process. *Cf. Martin v. Lauer*, 686 F.2d 24, 32 (D.C.Cir.1982) ("Since the [agency's requirement] works to restrict communications between government employees and their attorneys, it implicates the fundamental right of those employees to meaningful access to the courts."); *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1117 (5th Cir.1980) ("[T]he right to retain counsel in civil litigation is implicit in the concept of fifth amendment due process.").

So, with respect to some, if not all, of the nonpublic information that Mr. Jacobs describes in his *in camera* submission, unapproved disclosure to personal counsel would conform to the law and the rules of professional conduct while nevertheless transgressing Ms. Schiffer's requirement. Thus, the restraint that the government, in the person of Ms. Schiffer, imposes on Mr. Jacobs is broader than that imposed by law or professional ethics. The remaining issue is whether the restraint is unconstitutionally over-broad.

### III.

In *Martin v. Lauer*, 686 F.2d at 31–35, the D.C. Circuit articulated an approach that is most pertinent to this case. The question facing the court of appeals in *Martin* was whether the head of a DOJ office could require employees suing the office over a reduction in force to reveal to him any nonpublic information that they had given to their attorney. *Id.* at 31. The *Martin* court concluded that the proper way to resolve the issue was to balance the interests of the employees, *qua* citizens, against those of the government, as an employer. *Id.* (*citing Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

The *Martin* court first set out to identify the employees' interests and assess their importance. It found that the employees' "speech interests [were] not only legitimate but, because they implicate[d] appellants' fundamental right of access to the courts, [were] deserving of rigorous protection." *Id.* at 33. After all, "[a] government employee deciding whether to 'blow the whistle' on government fraud, waste, abuse or illegality must ascertain whether disbursal of the information that supports his charges is 'prohibited by law.' ... Surely, he must be allowed to consult his attorney for an answer to that question absent some strong governmental interest in limiting such communications." *Id.* at 33 n. 41.

Turning an eye to the other side of the scale, the *Martin* court recognized that, in general, regulations governing the public disbursal of sensitive information by agency employees served substantial government interests. *Id.* at 33–34. The court of appeals found, however, that the information at issue was not particularly sensitive, relating as it did solely to internal personnel rules and practices. *Id.* at 34. With respect to such information, the DOJ's interest in discouraging dissemination did not warrant depriving the plaintiffs of confidentiality in their communications with their attorney—an action which cut "deeply into the employee[s'] first amendment rights." *Id.* at 34–35.

The *Martin* court addressed only the DOJ's policy of requiring its employees to divulge to their superiors after the fact any nonpublic information that they had already disclosed to counsel. *Id.* at 31. In

this case, the Court faces what amounts to a prior restraint—an attempt to require an employee to notify his agency-employer and obtain permission *before* disclosing any nonpublic information to his personal lawyer. To enforce the requirement in this case would put the agency on notice of the employee's suspicions of wrongdoing. It would also delay the employee's access to legal advice until the request for authorization to disclose had run its administrative course: If the employee must follow FOIA procedure before imparting the information to his lawyer, he may, irrespective of whether he prevails, be deprived of legal counsel for months or years, and the more embarrassing or inculpatory the information, the greater the risk that implicated persons within the agency will stall the FOIA process. In sum, the restraint imposed on Mr. Jacobs' legitimate interests is considerably more onerous than the one that the D.C. Circuit found unconstitutional in *Martin.*

At the same time, it must be noted, the information that Jacobs wishes to impart to his attorney is more sensitive than that which the plaintiffs in *Martin* had revealed to theirs.[10] Unsurprisingly, then, and in contrast to the defendant in *Martin,* Ms. Schiffer has put forward several quite important government interests that the inhibitions imposed on plaintiff are designed to protect—interests that, Ms. Schiffer

claims, will be irredeemably compromised if Jacobs is allowed to do as he wishes.

First, the government generally has an interest in maintaining a frank and unrestricted flow of communication between agencies and their government counsel. This open exchange is necessary if agencies are to enforce the law as well as abide by it. According to Ms. Schiffer, "it would chill necessary discussions and impede the free exchange of ideas if every privileged communication to which Mr. Jacobs had access as an attorney with the Department could be delivered to a third party without the client's consent." Def.'s Mot.Summ.J. at 18–19.

Second, the government has an interest in maintaining its ability to litigate effectively, whether in bringing legal action or defending against it. If disgruntled government lawyers could, without departmental screening, disclose to third parties the nonpublic information to which they had become privy, litigants with interests adverse to the government might be able to obtain information not otherwise available through proper discovery channels. *Id.* at 19–20.

In her *in camera* submission, defendant particularizes additional DOJ interests that the pre-disclosure requirement is designed to protect in the circumstances of this case.[11] In short, Ms. Schiffer has, to a far greater degree than the defendant in

10. *See* Def.'s Mot.Summ.J. at 16 ("Plaintiff has been employed by the Department for 11 years, has handled many cases, has unrestricted access to hundreds of thousands of files and documents, participated in thousands of privileged conversations, and received and generated all sorts of privileged and protected documents and e-mail during pre-trial, trial, appellate, and settlement proceedings."). *See also* Def.'s *In Camera* Resp. to Ct.'s March 13, 1998 Order, Attach. 1 ¶¶ 4–5.

11. In addition to those described in defendant's publicly-filed briefs, Mr. Brighton lists in his *in camera* declaration two substantial government interests that, he believes, would be compromised if Mr. Jacobs were allowed to make the disclosures he contemplates.

First, the government has an interest in assuring that its officials reach decisions only after having had an opportunity to deliberate collaboratively with their staffs and other colleagues in the government. Second, the government agencies charged with enforcing federal law have an interest in thoroughly investigating possible illegality free from apprehension that the reputations of those subject to investigation will suffer unnecessary harm. If subordinates were free unilaterally to disclose any nonpublic information to persons outside of their agencies, officials might exhibit reluctance to share proposals with staff and to launch justified investigations. Def.'s *In Camera* Resp. to Ct.'s March 13, 1998 Order at 5, 12–13, Attach. 1 ¶ 6.

*Martin,* demonstrated that substantial government interests are at stake.

Fortunately, it does not appear that the Court must sacrifice one party's interests in order to protect the other's, for it is possible to protect the government's interests without foreclosing whistleblowers from informed legal advice. In *Martin,* the court of appeals found that "the government may protect its interests in prohibiting public disbursal of any sensitive information without intruding on the employee's substantial interest in freely discussing his legal rights with his attorney." *Martin v. Lauer,* 686 F.2d at 34. The first, and least restrictive, alternative that the court of appeals proposed was that the government itself invoke the advising attorney's duty to maintain client confidences:

> Because the attorney is bound to maintain the confidence of his client, . . . matters disclosed in confidential discussions between the attorney and his client would only become public if the client authorized the attorney to make such a disclosure or the attorney breached his ethical obligations. Arguably, the government could protect its interest in preventing public disclosure of government information by requiring the employee not to authorize any subsequent disclosure of sensitive government information by his attorney.

*Id.*

Defendant doubts that this first alternative would adequately protect the government's interests in this case. In *Martin,* there was no allegation that either the employee-plaintiffs or their lawyer had any inclination to disseminate the information that the employees brought away from the agency or to make use of it other than for purposes of the employment controversy. The *Martin* court explicitly relied on this fact in reaching its decision.[12] In this case, by contrast, defendant has made clear the reasons for her concern that nonpublic information received by plaintiff's counsel will find its way into the media and/or into the hands of third parties whose interests are inimical to the Division and its clients. *See* Def.'s Mot.Summ.J. at 20. Given that Mr. Jacobs openly seeks the freedom to share the nonpublic information he possesses indiscriminately with lawyers at "public interest and professional organizations committed to civil rights, whistleblower rights, government accountability, and environmental enforcement," Am. Compl. ¶ 58, defendant's fear is not entirely misplaced.

The D.C. Circuit proposed a second alternative in *Martin* for situations where the government cannot sufficiently protect its interests by simply requiring its employees to instruct their personal attorneys to keep all its nonpublic information confidential. The *Martin* court suggested that if the "agency had cause to believe [that] the employees or the attorney contemplated" revealing nonpublic information to others, "it might seek a protective order from the court." *Martin v. Lauer,* 686 F.2d at 32 n. 34. Such an order, the court of appeals believed, would protect the government's interests without infringing on the employees' rights. *Id.* at 35 n. 44.

■ Ms. Schiffer has acknowledged that the entry of an "appropriately stringent" protective order would adequately

---

**12.** *See Martin v. Lauer,* 686 F.2d at 27 n. 5 ("In reaching this conclusion we rely on several specific features of the case before us. . . . [T]here is no evidence in this case of any particular grounds for the agency to fear disbursal of the FOIA-exempt information to persons other than the attorney."); *Id.* at 32 ("Were the employees to reveal the FOIA-exempt information to others, or to authorize their attorney to do so, the balance between the government's interests and the employees' might well shift."); *Id.* at 34 ("The strength of the government's interest . . . varies according to the nature of the information and the likelihood of public dissemination."); *Id.* at 35 ("Especially in the absence of any specific allegation that appellants or their attorneys are likely to disseminate government information publicly, we conclude that appellants may not be required to disclose all of their discussions touching on FOIA-exempt information.").

protect the government's interests in this case.[13] But her idea of an appropriate order is one that specifically lists the government documents that Mr. Jacobs may submit to his attorney. Ms. Shiffer thus proposes that an agency employee be allowed to share nonpublic information with his attorney only after revealing the entire universe of nonpublic information that he contemplates disclosing, which is not what the *Martin* court appeared to have in mind. Rather, the D.C. Circuit was suggesting that the government's interests could be protected, even in a case where the employee's personal attorney could not otherwise be trusted to keep nonpublic information confidential as a matter of professional obligation, by a court order directing him to do so. Nowhere in its decision did the *Martin* court intimate that a protective order must be itemized. All that is required here is an order directing Mr. Jacobs' attorney to keep in confidence, and to use only for the purpose of rendering advice to Mr. Jacobs, any nonpublic information that his client may impart to him. The availability of such a protective order as a less restrictive alternative compels this Court to conclude that Ms. Shiffer's insistence upon advance approval violates the right to free speech guaranteed Mr. Jacobs by the First Amendment. Since the Court finds the restraint invalid on free-speech grounds, it need not decide whether the restraint also violates Mr. Jacobs' rights to free association and due process.

The correlative question is whether Ms. Shiffer's requirement violates Mr. Jacobs' constitutional rights to the extent that it reaches beyond disclosure to his private attorney. Applying the balancing test used in *Martin*, the Court finds that to the extent that Mr. Jacobs wishes to disclose nonpublic information to an unspecified number of unidentified attorneys at un-

named public-interest organizations, such disclosure would greatly increase the risk of harm to the agency's legitimate interests while affording Jacobs, for present purposes, simply the opportunity to shop his case, which is hardly a *sine qua non* of adequate legal advice. With that in mind, and considering that Mr. Jacobs can, under the protection of the Whistleblower Protection Act, divulge to the OSC whatever nonpublic information he wants,[14] it is the opinion of the Court that Ms. Shiffer's requirement of pre-disclosure clearance does not infringe on Mr. Jacobs' constitutional rights insofar as it may inhibit disclosures of nonpublic information to unspecified individuals at unnamed public-interest organizations.

## IV.

Finally, there is Mr. Jacobs' demand that Ms. Shiffer pay his attorney's fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412 (the "EAJA"). The EAJA provides that a court shall award "fees and other expenses" to a party that has prevailed in a civil action against an official of the United States acting in his or her official capacity unless the position of the United States was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of proving that its position in the lawsuit was substantially justified, which in this context means proving that the position had "a reasonable basis in law and fact." *Air Transport Association of Canada v. Federal Aviation Administration*, 156 F.3d 1329, 1332 (D.C.Cir.1998) (*quoting Pierce v. Underwood*, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

Mr. Jacobs' prayer for relief generally exempting him from inhibitions on the disclosure of nonpublic information to any

---

13. *See* Def.'s Reply in Supp.Mot.Summ.J. at 1 ("the action should be resolved pursuant to the proposed protective order"); *see also* Def.'s *In Camera* Resp. to Ct.'s March 13, 1998 Order at 1.

14. *See* 5 U.S.C. § 2302(b)(8)(B).

sympathetic third party likely to offer to advise him represents an extreme to which the Court has not found him entitled. In the circumstances the Court concludes that Ms. Schiffer was substantially justified in resisting Jacobs' request for *carte blanche* permission to disclose without following the rules. Plaintiff's request for an award of attorneys' fees and expenses is therefore denied.

For the foregoing reasons it is, this 16th day of April, 1999,

ORDERED, that plaintiff's motion for summary judgment is granted in part and denied in part; and it is

FURTHER ORDERED, that defendant's motion for summary judgment and motion to dismiss are granted in part and denied in part; and it is

FURTHER ORDERED, that defendant is enjoined permanently from requiring plaintiff to notify the DOJ and obtain authorization before disclosing to counsel hereinafter identified any nonpublic information without which, according to counsel's good-faith belief, counsel cannot formulate effective legal advice to plaintiff regarding matters arising from events giving rise to this action; and it is

FURTHER ORDERED, that in the context of this Order, "counsel" means Robert Van Kirk and all other lawyers at the firm of Williams & Connolly who may participate in advising plaintiff in matters arising from events giving rise to this action, as well as paralegal assistants, secretaries, and clerical and administrative personnel employed by Williams & Connolly who may work on said matters; and it is

FURTHER ORDERED, that counsel aforesaid shall not, without prior leave of this Court, disclose any nonpublic information obtained from plaintiff to any person or entity outside of Williams & Connolly, nor shall counsel use said information for any purpose other than in advising plaintiff in matters at issue in this action; and it is

FURTHER ORDERED, that nothing in this Order shall be read to authorize plaintiff or counsel to violate any law or rule of professional conduct; and it is

FURTHER ORDERED, that the Clerk shall enter judgment in accordance herewith; and it is

FURTHER ORDERED, that plaintiff's request for an award of fees and expenses pursuant to 28 U.S.C. § 2412 is denied.