Daniel S. JACOBS, Appellant,

v.

Lois J. SCHIFFER, in her official capacity as Assistant Attorney General for the Environment and Natural Resources Division of the U.S. Department of Justice, Appellee.

No. 99–5217.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 24, 2000.

Decided March 7, 2000.

Kathleen L. Jennings argued the cause for appellant. With her on the briefs was Robert A. Van Kirk.

Thomas M. Bondy, Attorney, United States Department of Justice, argued the cause for appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, Barbara C. Biddle, As-

sistant Director, and Wilma A. Lewis, United States Attorney.

Before: GINSBURG, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Having obtained a partial judgment in his favor, *see Jacobs v. Schiffer*, 47 F.Supp.2d 16 (D.D.C.1999), Daniel S. Jacobs appeals the denial of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). Jacobs contends that the district court misperceived the relevant inquiry under EAJA and that as a matter of law the government was not substantially justified in its position that Jacobs obtain its advance approval before sharing information with his attorney in the course of obtaining legal advice about a potential lawsuit against his employing agency. We agree, and reverse, remanding the case for the district court to determine the amount of attorney's fees to award Jacobs.

## I.

The underlying litigation stems from the reaction that Jacobs, a trial lawyer in the Environment and Natural Resources Division, Environmental Enforcement Section, of the United States Department of Justice, received when he reported his "qualms" about the propriety of certain strategies and tactics by the Section in cases to which he was assigned to his supervisors—ultimately, to Lois J. Schiffer, Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice. *See Jacobs*, 47 F.Supp.2d at 17–18. During the same period Jacobs reported his qualms, Jacobs' performance rating was lowered and he was involuntarily transferred to a different litigating group. *Id.* at 18. Jacobs consulted a private attorney to determine "whether the conduct that he reported within the [Department] consti-

tuted wrongdoing, whether his supervisors improperly retaliated against him, and what public disclosures he might lawfully make under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)." *Id.*

Recognizing the potentially sensitive nature of some of the materials Jacobs sought to disclose, Jacobs' attorney at the time, Jonathon Turley, asked Assistant Attorney General Schiffer to notify Division management that he "would have to review internal memoranda on the specific litigation that is the subject of the retaliation claims," and that "any confidentiality or departmental objections to such a review be made as soon as possible so as to expedite this matter." The Department's response on behalf of the Assistant Attorney General was that the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1996), controlled, and hence any records that Jacobs wanted to disclose to his attorney had to be identified before the Department could authorize their disclosure. Citing its FOIA regulations, 28 C.F.R. Pt. 16 (1996), the Department advised that Jacobs " 'must describe the records sought in sufficient detail to enable Department personnel to locate the records with a reasonable amount of effort.' "

Jacobs responded through counsel that a whistle-blower does not make documents "public" by showing them to his or her attorney, and that he was entitled "to seek legal advice and discuss internal matters without such discussions being classified as an unauthorized or public disclosure." Jacobs asked whether the Department would consider certain communications by him to his attorney without prior approval to violate Department rules, specifically: (1) oral communications between a whistle-blower and his attorney discussing the basis of his claim and the handling of specific cases that are material to the whistle-blower complaint; (2) internal electronic messages and memoranda from or to supervisors concerning the whistle-blower's internal complaints; and (3) internal electronic messages and memoranda concern-

ing the handling of cases that are material to the whistle-blower complaint. The Department's position was that these communications were not exempt from the general restrictions on the release of non-public information.

Because Jacobs and the Department were at loggerheads concerning how Jacobs could obtain legal advice with respect to his contemplated lawsuit against the Department, Jacobs filed suit against Assistant Attorney General Schiffer in 1997, seeking injunctive relief for what he considered to be a denial of his rights secured by the First and Fifth Amendments.[1] Jacobs' first cause of action, claiming a First Amendment right to communicate with his attorney, was premised largely on *Martin v. Lauer*, 686 F.2d 24 (D.C.Cir.1982) ("*Martin II*"). Jacobs' second cause of action went beyond *Martin II*, alleging that his First Amendment associational interests gave him the right to disclose FOIA-exempt information in the course of seeking legal advice from his attorney and from "public interest and professional organizations committed to civil rights, whistle-blower rights, government accountability, and environmental enforcement." His third cause of action alleged an unconstitutional impairment of attorney-client communications that impeded his access to the courts in violation of the Due Process Clause.

The district court granted summary judgment for Jacobs on his first cause of action, ruling that the Department's "absolute embargo" on Jacobs' communications with his attorney constituted "a prior re-straint ... considerably more onerous than the one that the D.C. Circuit found unconstitutional in [*Martin II*]," and thus violated Jacobs' free speech rights. *Jacobs*, 47 F.Supp.2d at 20, 22, 24. After reviewing *in camera* documents Jacobs proposed to show his attorney, the district court found that "it is clear on this record that Mr. Jacobs could show his attorney some, if not all, of the documents that he would like to disclose without violating any statute or regulation." *Id.* The district court likewise rejected the Department's position that a government lawyer, under D.C. Rules of Professional Conduct Rule 1.6(a), " 'reveal[s]' his client's confidences and secrets when he discloses to his personal attorney—with the express understanding that the information should go no further—only those confidences and secrets that the latter needs in order to advise the government lawyer of his rights and obligations as a possible whistle-blower." *Id.* at 20–21. The district court concluded, therefore, that the Department's restraint "is broader than that imposed by law or professional ethics," *id.* at 21, and, relying on *Martin II*, 686 F.2d at 31–35, the court ruled that the restraint violated Jacobs' First Amendment rights. *Jacobs*, 47 F.Supp.2d at 24. In the district court's view, to address the Department's concerns about the disclosure of confidential information, "[a]ll that is required ... is an order directing Mr. Jacobs' attorney to keep in confidence, and to use only for the purpose of rendering advice to Mr. Jacobs, any nonpublic information that his client may impart to him." *Id.* at 24.[2] While

---

1. Jacobs sought three orders: (1) that the prohibition on unauthorized disclosures of non-public information in attorney-client communications, or any requirement of pre-communication review of such disclosures, violates the right of freedom of speech under the First Amendment; (2) that the prohibitions on such disclosures in attorney-client communications, or any requirement of pre-communication review of the same, violates freedom of association under the First Amendment; and (3) that such prohibition or requirement violates the right to unimpeded access to the courts under the Due Process Clause of the Fifth Amendment. The prayer for relief also sought orders enjoining the Department from enforcing pre-disclosure restrictions and awarding Jacobs reasonable attorney's fees and costs under EAJA.

2. The district court also permanently enjoined the Department

> from requiring [Jacobs] to notify the [Department] and obtain authorization before disclosing to counsel hereinafter identified any nonpublic information without which, according to counsel's good-faith belief,

concluding that Jacobs had no right to disclose FOIA-exempt information to public interest groups, the court found it unnecessary to resolve Jacobs' second and third causes of action. *Id.*

Although Jacobs had succeeded on his free speech claim, the district court denied Jacobs attorney's fees under EAJA, explaining only that:

> Mr. Jacobs' prayer for relief generally exempting him from inhibitions on the disclosure of nonpublic information to any sympathetic third party likely to offer to advise him represents an extreme to which the Court has not found him entitled. In the circumstances the Court concludes that [the Department] was substantially justified in resisting Jacobs' request for carte blanche permission to disclose without following the rules.

*Id.* at 24–25. The Department did not appeal the judgment on Jacobs' free speech claim, and our review, therefore, is limited to Jacobs' contention that the district court erred in denying him attorney's fees under EAJA.

## II.

■ Under EAJA, a party is entitled to attorney's fees when (1) the party "prevailed" in the underlying litigation by "succeed[ing] on a significant issue in litigation that achieves some of the benefits the party sought in bringing suit," *Anthony v. Sullivan,* 982 F.2d 586, 589 (D.C.Cir.1993), (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)), and (2) the government cannot demonstrate substantial justification for its position. *See, e.g., F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 594 (D.C.Cir.1996). The government's "position" includes both its pre-litigation and litigation positions, *id.,* and is "substantially justified if it is 'justi-

fied in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. That is no different from ... [having] a reasonable basis both in law and fact.'" *Id.* at 595 (quoting *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). The government bears the burden of demonstrating substantial justification. *Id.* The district court ruled that the Department had met its burden, and our review of the district court's denial of attorney's fees is for abuse of discretion. *See, e.g., Pierce,* 487 U.S. at 562–63, 108 S.Ct. 2541; *Vollmer,* 102 F.3d at 596.

■ It is well established that a party "prevails" under EAJA's first inquiry even if success is only partial, *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), and it is undisputed that Jacobs prevailed on his first cause of action: the district court ruled that the Department's position requiring preclearance was an "absolute embargo" and an unconstitutional prior restraint. *Jacobs,* 47 F.Supp.2d at 20, 24. In such circumstances, the district court's task with respect to the EAJA inquiry was to determine whether the government's position with respect to the issue on which the party prevailed was substantially justified. *See, e.g., Air Transport Ass'n of Canada v. FAA,* 156 F.3d 1329, 1332 (D.C.Cir. 1998); *Cinciarelli v. Reagan,* 729 F.2d 801, 804–05 (D.C.Cir.1984).

■ The district court's terse denial of attorney's fees effectively precluded inquiry into the reasonableness of the Department's position with respect to the issue upon which Jacobs prevailed, namely his right to disclose information to his attorney without first revealing that infor-

---

counsel cannot formulate effective legal advice to [Jacobs] regarding matters arising from events giving rise to this action.... *Jacobs,* 47 F.Supp.2d at 25. The district court's order provided that "nothing in this

Order shall be read to authorize [Jacobs] or counsel to violate any law or rule of professional conduct...." *Id.*

mation to the Department for preclearance. Instead, the district court evaluated the Department's position primarily as a reaction to Jacobs' broader contentions concerning public interest groups on which he did not prevail. The court has explained that such a "holistic" approach to the government's position is contrary to EAJA, see Air Transport Ass'n of Canada, 156 F.3d at 1332, and that the relevant "position" of the government is that which corresponds to the claim or aspect of the case on which the private party prevailed. Thus, even if the Department was, as the district court found, justified in refusing to authorize carte blanche disclosure of nonpublic information to public interest organizations, the question for the district court under EAJA was whether the Department's preclearance restraint on Jacobs' communications with his attorney was reasonable. By lumping together the Department's positions on Jacobs' first and second causes of actions, involving disclosure to his attorney and public interest organizations, respectively, the district court never addressed that crucial question.

The district court's failure to make the appropriate inquiry under EAJA was an error of law, which, by definition, was an abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Because the question of whether the Department's position was substantially justified can be answered as a matter of law, a remand is unnecessary, see, e.g., George Hyman Constr. Co. v. Brooks, 963 F.2d 1532, 1539 (D.C.Cir.1992); Shaw v. FBI,

749 F.2d 58, 63 (1984), and we turn to the critical question that the district court did not address.

 In view of the district court's judgment on the merits of Jacobs' free speech claim, which the government did not appeal,[3] the appropriate inquiry under EAJA is whether the Department was substantially justified in placing on Jacobs' communications with his attorney a prior restraint considerably more onerous than the one that the court held unconstitutional in Martin II.[4] On the undisputed facts, the answer can only be "No." The Department has been consistently unwilling to recognize that communication of government information by a federal government employee to the employee's attorney, where the attorney is bound to keep such information confidential, is not a public disclosure of such information, and that the employee enjoys rights under the First Amendment to engage in such communications in addition to those the employee enjoys as a member of the general public under FOIA. In response to Jacobs' initial request for the Department to register its objections to any of Jacobs' contemplated disclosures to his attorney, the Department responded: "[W]e know of no authority under which the types of communications described in your letters are excepted from the general restrictions on the release of confidential information." Jacobs, 47 F.Supp.2d at 18 n. 2. Once Jacobs filed his lawsuit, the Department's position changed only to refer to additional statutory and regulatory obstacles to dis-

---

**3.** The Department in its brief to this court takes issue with the district court's characterization of the government's position as requiring Jacobs to receive advance approval before disclosing information to his attorney and as a restriction more severe than that at issue in Martin II. This it cannot do; it did not appeal that judgment. See, e.g., Trahan v. Brady, 907 F.2d 1215, 1218 (D.C.Cir.1990); Trahan v. Regan, 824 F.2d 96, 103 (D.C.Cir. 1987), vacated on other grounds, 866 F.2d 1424 (D.C.Cir.1988). In any event, we find no basis on which to conclude that the district

court clearly erred in its characterization. See Cooter & Gell, 496 U.S. at 403–05, 110 S.Ct. 2447; Vollmer, 102 F.3d at 596.

**4.** Subsequently, the court affirmed the district court's judgment that even in the absence of specific precedent regarding a federal employee's rights to communicate with the employee's attorney, the government's position had not been substantially justified under EAJA. See Martin v. Lauer, 740 F.2d 36, 45–47 (D.C.Cir.1984) (Martin III).

closure,[5] but at no point did the Department yield from its preclearance position as to the first cause of action on which Jacobs ultimately prevailed.

Yet the Department's position—its professed unawareness of any authority that might justify Jacobs' contemplated communications with his attorney—failed to acknowledge that the First Amendment, superior to the statutory and regulatory provisions relied upon by the Department, might provide such authority. This failure was inexplicable in light of *Martin II*, which was decided more than a decade earlier. In *Martin II*, the Department had required two employees who were challenging the legality of a reduction-in-force to inform it of what non-public, FOIA-exempt information they had revealed to their attorney. 686 F.2d at 26–27. Noting that a balancing test to weigh the First Amendment rights of government employees against the government's interests will vary according to the type and context of the speech at issue, *id.* at 31 (citing *Pickering v. Bd. of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)), the court concluded that:

> Since the [Department's] memorandum works to restrict communications between government employees and their attorneys, it implicates the fundamental right of those employees to meaningful access to the courts. Absent grounds to believe that discussions in this limited context would significantly impair any governmental interest, we conclude that the ... memorandum provisions, as ap-

plied to FOIA-exempt information violate appellants' first amendment rights.

*Id.* at 32.[6] Observing that there is a critical distinction between disclosures in the attorney-client context and public disclosures, *id.* at 32, 34–35, the court further concluded that "the government may protect its interest in prohibiting public disbursal of any sensitive information without intruding on the employee's substantial interest in freely discussing his legal rights with his attorney." *Id.* at 34. While the government arguably "could protect its interest in preventing public disclosure of government information by requiring the employee not to authorize any subsequent disclosure of sensitive government information by his or her attorney," the court stated that a "broad restriction, undermining the confidentiality of the attorney-client relationship and chilling discussions with counsel in order to protect the government's unclear interest in monitoring all discussions of FOIA-exempt information cuts too deeply into the employee's first amendment rights." *Id.* at 34–35.

▮ It thus has long been clear that the First Amendment does not provide a federal employee seeking legal advice regarding a dispute with the employing agency with *carte blanche* authority to disclose any and all confidential government information to the employee's attorney, but rather that the scope of the First Amendment right is determined by balancing the employee's interests in communication with the government's interests in

---

5. The additional statutes and regulations cited by the Department included the Privacy Act, 5 U.S.C. § 552a(b) (1996); the Trade Secrets Act, 18 U.S.C. § 1905 (1996); an ethics regulation concerning use of non-public information by a government employee, 5 C.F.R. § 2635.703 (1996); the so-called "Touhy" regulations governing production or disclosure in federal and state proceedings, 28 C.F.R. § 16.21–16.29 (1996); and a regulation prohibiting the improper use of official information, 28 C.F.R. § 45.735–10 (1996). Schiffer also cited Department Order 2710.8A (1997), regarding removal and maintenance of documents.

6. In *Martin II*, the court

> emphasize[d], however, that this conclusion pertains only to the communications made to the employees' attorneys and not to any subsequent use made of those communications. Were the employees to reveal the FOIA-exempt information to others, or to authorize their attorney to do so, the balance between the government's interests and the employees' might well shift.

*Id.* at 32.

preventing communication. Relevant to this balancing is whether the attorney is likely to keep this information in confidence, as suggested by willingness to enter into a protective order, or whether such communications to the personal attorney will operate as a *de facto* public disclosure. Where, as here, there was no evidence to suggest that Jacobs' attorney would publicly disclose the information Jacobs sought to communicate, the First Amendment required a balancing of interests beyond the balance between disclosure and non-disclosure under the Freedom of Information Act. Understandably, the Department would be concerned about giving *carte blanche* approval of unlimited disclosures to one of its attorneys who has access to a broad range of potentially sensitive, non-public information and who is challenging its management of litigation. But the reasonableness of the Department's position with respect to Jacobs' free speech claim regarding his attorney must be evaluated in light of *Martin II*. In that regard it bears noting that in *Martin II* the court observed, albeit in dictum, that in the whistle-blower context, where a legal question arises as to whether a contemplated public disclosure would be prohibited by law, "[s]urely, [the employee] must be allowed to consult his attorney for an answer to that question absent some strong governmental interest in limiting such communications." *Martin II,* 686 F.2d at 33 n. 41.

Consequently, the Department's position was not substantially justified as a matter of law in light of the Department's complete unwillingness to acknowledge that Jacobs had an interest in communicating with his attorney on his side of the First Amendment's scale. While the district court's judgment on the merits is a separate matter, *see Vollmer,* 102 F.3d at 595, the gap between where the district court determined the point of First Amendment equilibrium to be and the Department's "absolute embargo" evidences the Department's unwillingness to confront the constitutional implications of its dispute with

Jacobs. Instead, prior to the instant litigation, the Department stated that it was aware of no authority that would have allowed Jacobs to make his contemplated communications to his attorney. In the district court, the Department continued to claim that it was unable to assess the scope of the information that Jacobs contemplated sharing with his attorney, even though Jacobs' attorney had previously indicated to the Assistant Attorney General that "the scope of the inquiry concerns primarily one case and correspondence with the Section and yourself on that case." Although Jacobs' attorney also acknowledged that more than one case might be involved in Jacobs' contemplated whistleblower claim the Department was not faced with an employee engaged in an unbounded fishing expedition. In this court, the Department continues to treat Jacobs' disclosures to his attorney as disclosures to the public and attempts to distinguish *Martin II* by maintaining, contrary to the district court's findings by which it is bound, *see supra* n. 3, that the Department never required preclearance of information Jacobs sought to share with his attorney, and further, but without claiming that the protective order entered by the district court is insufficient to address its concerns, that the sensitive information to which Jacobs had access was fundamentally different from the information at issue in *Martin II*. That Jacobs sought also, in his second cause of action, to share information with third parties is irrelevant to the EAJA issue, for he did not prevail on that claim, and thus the Department's continued focus on that part of his complaint is misplaced, particularly insofar as prior to Jacobs' filing suit the Department's position was directed solely at Jacobs' request to share information with his attorney.

Under the circumstances, the Department could not reasonably insist that its interests could be protected only by preclearing document-by-document the information Jacobs sought to share with his

attorney. Even assuming the Department could have adopted a position that would have been substantially justified short of agreeing to a protective order, in light of *Martin II* and the willingness of Jacobs and his attorney to address the Department's concerns that their communications not be disclosed to the general public, the Department cannot meet its burden to demonstrate that its prior restraint on Jacobs' communications with his attorney was substantially justified.

Accordingly, we reverse and remand the case for the district court to determine the amount of attorney's fees to award Jacobs.